**Robert Brent HACKER, Plaintiff,**

v.

**Victor HERBERT, Defendant.**

No. 91–CV–1005.

United States District Court,
N.D. New York.

July 2, 1993.

---

Robert Brent Hacker, pro se.

Robert Abrams, Atty. Gen. State of N.Y., Dept. of Law, Albany, NY (Amy Schallop, Asst. Atty. Gen., of counsel), for defendant.

Gerald F. Mollen, Dist. Atty., County of Broome, Binghamton (Carol A. Cocchiola, Sr. Asst. Dist. Atty., of counsel), for Broome County.

### MEMORANDUM DECISION
### AND ORDER

CHOLAKIS, District Judge.

Petitioner Robert Hacker complains of a judgment of conviction rendered in the Broome County Court on March 3, 1982, after a jury found him guilty of Rape and Sodomy, First Degree, and Robbery, First Degree. Petitioner was sentenced to an indeterminate term of 12½ to 25 years imprisonment. The Appellate Division, Third Department, affirmed on December 5, 1985, and the New York State Court of Appeals denied leave to appeal on February 18, 1986.

The Broome County Court denied a motion to vacate the conviction pursuant to New York Crim.Proc.Law § 440.10, both on the merits of some issues and on petitioner's failure to raise other issues on appeal. The petitioner made a motion for a writ of error *coram nobis* in the Appellate Division, Third Department. This motion was based on the petitioner's claim that appellate counsel rendered ineffective assistance by failing to raise on appeal the issue of the denial of petitioner's right to self-representation at trial.

The Appellate Division agreed with petitioner and reinstated his direct appeal, based upon the self-representation issue, on June 19, 1990, 162 A.D.2d 815, 559 N.Y.S.2d 184. On November 21, 1990, after the issue was briefed and argued by both parties, the Appellate Division affirmed the conviction. 167 A.D.2d 729, 563 N.Y.S.2d 300. The New York Court of Appeals denied leave to appeal on March 4, 1991, 77 N.Y.2d 906, 569 N.Y.S.2d 938, 572 N.E.2d 621.

Having exhausted his state court remedies, petitioner now seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. Petitioner originally raised four grounds for this court's review: (1) unconstitutional denial of peti-

tioner's application to proceed *pro se;* (2) improper refusal to suppress petitioner's pretrial identification; (3) ineffective assistance of counsel; and (4) unduly harsh and biased sentence. Petitioner has since withdrawn the claim of unduly harsh sentencing.[1]

Respondent argues for denial of the petition, claiming both that some of petitioner's claims are procedurally barred from federal review, and that the remaining claims fail on the merits.

Magistrate Judge Gustave J. Di Bianco, in his Report/Recommendation, recommends that the petition be denied and dismissed. With respect to petitioner's claims regarding pretrial identification and ineffective assistance of counsel (numbers 2 and 3), the recommendation of the magistrate judge is accepted and adopted. With respect to petitioner's first claim, however, the recommendation of the magistrate judge is rejected. Petitioner was denied his Sixth Amendment right to self-representation, and he is entitled to a remedy from this court.

## DISCUSSION

### A. The Right to Self-Representation

#### 1. Federal Law

■ The Sixth Amendment of the United States Constitution grants a criminal defen-

dant the right to represent himself in proceedings against him. *Faretta v. California,* 422 U.S. 806, 819, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975). If a defendant chooses to forego the services of defense counsel and act on his own behalf, the state cannot compel him to accept a lawyer he does not want. *Id.* at 833, 95 S.Ct. at 2550. Counsel that is thrust upon the accused becomes "an organ of the State interposed between an unwilling defendant and his right to defend himself personally."[2] *Id.* at 820, 95 S.Ct. at 2533.

■ The right to defend *pro se* must be asserted, and carries with it the concomitant relinquishment of the right to counsel. *Id.* at 835, 95 S.Ct. at 2523. Because such a waiver of the right to counsel may greatly disadvantage the defendant, there is a strong presumption against it.[3] *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1937). The Supreme Court has held that waiver will not be valid unless "knowingly and intelligently" made. *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2523 (quoting *Zerbst,* 304 U.S. at 464–65, 58 S.Ct. at 1023–24).

Furthermore, the Second Circuit, in an attempt to forestall attacks on adverse verdicts by convicted criminals who were represented by counsel, has held that a defen-

---

1. Petitioner's Traverse and Memorandum of Law at 15.

2. The right to self-representation has been passionately and eloquently defended by many members of the bench. To depart this subject without some recognition of their efforts would be an injustice of another kind. A small sampling of noteworthy prose includes: "The right to represent oneself against the marshalled forces of government, to undertake personally to convince a jury of one's innocence, embodies principles of individual integrity, autonomy and self-expression so fundamental to our system that its abrogation calls into question the entire fabric of an individual's innate personal liberty." *Johnstone v. Kelly,* 633 F.Supp. 1245, 1245 (S.D.N.Y.1986) (Brieant, J.); "When a criminal defendant elects to stand at the Bar in his own defense, and he does so knowingly, voluntarily and unequivocally, a court is bound by the Constitution to honor that election, however suicidal it may appear to be." *Id.;* "[E]ven in cases where the accused is harming himself by insisting on conducting his own defense, respect for individual autonomy requires that he be allowed to go to jail under his

own banner...." *United States v. Denno,* 348 F.2d 12, 15 (2nd Cir.1965) (Waterman, J.); "In the long history of British criminal jurisprudence, there was only one tribunal that ever adopted a practice of forcing counsel on an unwilling defendant in a criminal proceeding.... the Star Chamber. [T]he Star Chamber has for centuries symbolized disregard of basic individual rights." *Faretta,* 422 U.S. at 821, 95 S.Ct. at 2534 (Stewart, J.).

3. The assistance of counsel need not be an all-or-nothing proposition. A defendant's need for assistance in self-representation can be met, at the trial judge's discretion, by the appointment of stand-by counsel. "Although the Constitution prohibits courts from requiring criminal defendants to be defended by counsel, it does not foreclose trial courts from using less overbearing means of ensuring that *pro se* defendants have adequate legal representation. In cases in which the trial judge fears that a *pro se* defendant lacks the ability to defend himself adequately, the judge can appoint counsel to assist the defendant in his *pro se* defense." *Johnstone v. Kelly,* 808 F.2d 214, 216 (2nd Cir.1986) (citations omitted).

dant's request to proceed *pro se* must also be "unequivocal." *United States v. Denno*, 348 F.2d 12, 15–16 (2nd Cir.1965).

### 2. New York State Law

■ The New York courts have incorporated both of these requirements into a three-prong test, restricting a defendant's right to proceed *pro se* to circumstances where: (1) the request is unequivocal and timely asserted, (2) there has been a knowing and intelligent waiver of the right to counsel, and (3) the defendant has not engaged in conduct which would prevent the fair and orderly exposition of the issues. *People v. McIntyre*, 36 N.Y.2d 10, 17, 364 N.Y.S.2d 837, 844, 324 N.E.2d 322, 329 (1974).

### B. Standard of Review of State Court Decisions

■ At issue in this case is whether the state courts' application of the New York test violated the petitioner's Federal Constitutional right to self-representation. When entertaining an application for a writ of *habeas corpus* instituted to contest a state court judgment, any factual determination by the state court shall be presumed to be correct unless it is "not fairly supported by the record." [4] 28 U.S.C. § 2254(d). The magistrate judge, after reviewing the case under this standard, issued a Report/Recommendation. This recommendation is subject to *de novo* review by this court, which may accept, reject, or modify it, in whole or in part. Local Rule 43 II(A)(1)(b) of the United States District Court for the Northern District of New York.

### C. Analysis

In an attempt to separate what are often overlapping issues, each of the three prongs of the New York test should be considered

separately. Factual determinations have been made by the state courts on only the first two prongs: i.e., the trial judge found that petitioner's waiver of his right to counsel was not knowing and intelligent, and the appellate court, on writ of error *coram nobis*, found that petitioner's assertion of his right of self-representation was equivocal. Those determinations are the only ones reviewable by this court.

Because the third prong of the test, relating to conduct of the petitioner, was discussed and given weight by the magistrate judge and was also mentioned in both state court proceedings, it will be briefly discussed here as well. It bears repeating, however, that no factual determination was made by the state courts on this ground.

### 1. The State Court's Finding that Petitioner's Request was Equivocal is Not Fairly Supported by the Record.

■ Under the first prong of the New York test, a request to defend *pro se* need not be granted unless it is both timely asserted and unequivocal. *McIntyre*, 36 N.Y.2d at 17, 364 N.Y.S.2d at 844, 324 N.E.2d at 329. To be "timely asserted" the request need only be made before commencement of the trial. *Id.* The state courts made no finding on the issue of timeliness in this case, and, in fact, the record shows that the request was made prior to trial.

The state appellate court did make a finding concerning the equivocality of petitioner's request. The court held that

> [w]e are of the view that the record does not show the required unequivocal request. Rather, it was a spur of the moment decision, prompted more by defendant's dissatisfaction with the denial of his request to change assigned counsel than by a know-

4. 28 U.S.C. § 2254(d)(8) indicates that the record to be examined by the reviewing court is that of the state court proceeding in which the factual determination at issue was made. The letter given such great weight by the magistrate judge was not written until the day *after* the initial proceeding in which petitioner's request to defend *pro se* was denied. *See infra* for a discussion of this letter. The record, however, may be expanded pursuant to Rule 7 of the Rules Governing Section 2254 Cases in the United States District Courts.

Whether or not the letter in question was formally added to the record, its inclusion at this stage is not prejudicial to petitioner because he has had an opportunity to respond, as required by Rule 7(c), and has done so in his affidavit in opposition to the magistrate judge's Report/Recommendation.

ing and voluntary election to forego the benefits of an attorney and proceed *pro se.*

*People v. Hacker,* 167 A.D.2d 729, 563 N.Y.S.2d 300, 301 (3d Dep't 1990), *appeal denied,* 77 N.Y.2d 906, 569 N.Y.S.2d 938, 572 N.E.2d 621 (1991) (citation omitted).

■ The New York courts have defined an unequivocal request as one that is "clearly and unconditionally presented to the trial judge." *McIntyre,* 36 N.Y.2d at 17, 364 N.Y.S.2d at 844, 324 N.E.2d at 329. The question of clarity is best resolved by "scrutiny of petitioner's actual statement to the trial judge." *Wiesner v. Abrams,* 726 F.Supp. 912, 918 (E.D.N.Y.1989), *aff'd mem.,* 909 F.2d 1473 (2nd Cir.1990). Petitioner made his request during the following exchange with the trial judge:

> *Court:* My obligation is to assign competent trial counsel; I have met that obligation. Your choice, as far as I'm concerned, is to utilize trial counsel that's made available to you or doing without it [sic].
>
> *Defendant:* I will do without it then.
>
> *Court:* You're going to represent yourself?
>
> *Defendant:* Yep.
>
> *Court:* You're sure you want to do that?
>
> *Defendant:* Yep.

Appendix to Petitioner's Motion for Writ of Error *Corum Nobis* at 8–9 [hereinafter A].

Defendant's statement is a clear assertion of his desire to represent himself. The judge asked him twice if he was 'sure, and both times he responded affirmatively. In a similar case, *Johnstone v. Kelly,* 633 F.Supp. 1245 (S.D.N.Y.1986), the district court found, and the appellate court agreed,[5] that the following exchange was a clear and unconditional request:

> *Defendant:* I don't want him [Attorney Van Leer]. Why are you bothering me? I said I do not want the man point blank. I do not want him. Why do you keep bugging me? I don't want the man.

*Court:* You don't have the experience or training to defend yourself.

*Defendant:* Yes I do. I will just sit right there ... I don't want him.

*Court:* That may well be, but I am not going to allow you to represent yourself.

*Id.* at 1247.

In comparison to Johnstone's request to defend *pro se,* the request made by petitioner in the case at bar is crystal clear.

In another similar case, *Wiesner v. Abrams,* 726 F.Supp. 912 (E.D.N.Y.1989), the following assertions made by the defendant after denial of his request to change counsel were deemed unequivocal:

> "In that case, your Honor, I don't feel I can go ahead with Mr. Gilroy and I will have to go ahead pro se if you insist.... At this point I will have to say I prefer to proceed pro se. *I think it would be improper to do so. I don't feel competent.*"

*Id.* at 915 (emphasis added).

Despite Wiesner's repeated statements that he felt unqualified to represent himself, *id.,* and the judge's agreement with those statements and denial of the request, *id.,* the district court held that Wiesner's request had been made unequivocally.

Again, by comparison to Wiesner's request, the request made by petitioner in the instant case is clear and unequivocal.

■ Respondent argues, however, and the state appellate court has found, that because petitioner's request followed on the heels of a denial of his request to change assigned counsel, it was equivocal. *Hacker,* 167 A.D.2d 729, 563 N.Y.S.2d at 301. This argument must fail. The Second Circuit has spoken quite clearly on this issue, stating that "[a] request to proceed *pro se* is not equivocal merely because it is an alternative position, advanced as a fallback to a primary request for different counsel." *Johnstone,* 808 F.2d at 216 n. 2 (*citing Faretta,* 422 U.S. at 810 n. 5, 835–36, 95 S.Ct. at 2529 n. 5,

---

**5.** The issue on appeal was whether the district court had erred in finding that an unconstitutional denial of the right to proceed *pro se* was, in Johnstone's case, harmless error. The Second Circuit held that such a violation can never be

harmless error. *Johnstone v. Kelly,* 808 F.2d 214, 218 (2nd Cir.1986), *cert. denied,* 482 U.S. 928, 107 S.Ct. 3212, 96 L.Ed.2d 699 (1987). This issue is discussed in greater detail *infra.*

2541, and *Denno*, 348 F.2d at 14 n. 1, 16).[6] It was therefore improper for the appellate court to base its decision, even in part, on this circumstance.[7]

The magistrate judge has pointed to *Hodge v. Henderson*, 761 F.Supp. 993 (S.D.N.Y.1990), *aff'd*, 929 F.2d 61 (2nd Cir. 1991), as a case in contrast to the *Johnstone* cases. In *Hodge*, a request to proceed *pro se* that was accompanied by a request for substitute counsel was dismissed as equivocal. The district court, on review, took into account a motion filed after the refusal of the request, wherein the defendant asked to act as co-counsel at trial. Because the motion stated that he would be represented by a practicing attorney, the court construed it as an abandonment of his request to defend *pro se*.

*Hodge* is distinguishable from the case at bar because petitioner in the instant case has not taken any affirmative action which could be construed as abandonment of his request to defend *pro se*. His mere acquiescence in counsel's representation at trial shall not prejudice his request after the fact. *See United States v. Lorick*, 753 F.2d 1295, 1299 (4th Cir.1985), *cert. denied*, 471 U.S. 1107, 105 S.Ct. 2342, 85 L.Ed.2d 857 (1985) (apparent acquiescence could, in fairness, only be taken as concession of inability to act on asserted right). In any event, *Johnstone*, 808 F.2d 214 is binding upon this court; *Hodge* is not.

The state appellate court's finding also relies upon the spontaneity of petitioner's request as evidence that he should not have been taken seriously. Petitioner's request, however, was in direct response to a take-it-or-leave-it proposition from the judge. A9. Furthermore, the petitioner twice repeated his intention in response to direct questioning from the judge. A9. The trial judge is in the best situation to make a determination on a defendant's equivocality. *See generally Burton*, 937 F.2d 131. The judge in this case clearly took petitioner's request seriously, because he went on to question both petitioner and petitioner's mother, Mrs. Jones, in an attempt to determine whether petitioner's waiver of counsel was knowing and intelligent, and based his finding on those grounds.[8] This implicit determination by the trial judge that the petitioner meant what he said must be respected.

Before concluding on the issue of equivocality, it is necessary to discuss the letter to which the magistrate judge attaches such weight in his Report/Recommendation. So critical was it to his determination that, but for this letter, he would have been inclined to order an evidentiary hearing on this issue. Magistrate Judge's Report/Recommendation at 14 [hereinafter R/R].

The letter in question was sent by the petitioner to Justice Fischer of the New York State Supreme Court on the day after the hearing. A20–22. It was forwarded by Justice Fischer to Judge Coutant, the trial judge.

The magistrate judge reads this letter to mean that petitioner was not really interested in defending *pro se* at all, but was interested only in a change of counsel. This conclusion is not supported by the text of the letter, and requires far too much reading between the lines. Nowhere in the letter does petitioner retract his request to defend

**6.** *See also Wiesner*, 726 F.Supp. at 919 (following *Johnstone* on facts similar to those in both *Johnstone* and the instant case). *But see Burton v. Collins*, 937 F.2d 131 (5th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 642, 116 L.Ed.2d 660 (1991) (upholding trial judge's denial of request to proceed *pro se* as a spontaneous response to judge's refusal to grant new counsel), and *Reese v. Nix*, 942 F.2d 1276 (8th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 1220, 117 L.Ed.2d 457 (1992) (upholding trial judge's denial of request to proceed *pro se* as impulsive response to refusal of request for new counsel).

**7.** Although there was some speculation in both proceedings that petitioner's reason for wanting

to dismiss counsel was that counsel would not cooperate with his unethical demands, a defendant's motivations for wanting new counsel or wanting to represent himself are of no proper concern to the court in the context of a request to defend *pro se*. *Johnstone*, 633 F.Supp. at 1249. The consideration given to the petitioner's motivations by both the state courts and the magistrate is discussed *infra*.

**8.** In the majority of cases where the trial judge did not believe the defendant meant what he said, he did not bother to inquire into waiver issues. *See Burton*, 937 F.2d 131; *Reese*, 942 F.2d 1276; *Hodge*, 761 F.Supp. 993.

*pro se*, nor does he explicitly reassert a desire that new counsel be appointed to him. Rather he reaffirms his dissatisfaction with the lawyer who has been appointed to him, A20–21, and asks again that he be removed from the case. A20.

This letter is more properly read as an expression of frustration with the situation the petitioner has been put in by the trial judge. A22. Justice Stewart wrote that "[t]o force a lawyer upon a defendant can only lead him to believe the law contrives against him." *Faretta*, 422 U.S. at 834, 95 S.Ct. at 2540. The petitioner voiced his own version of this sentiment at the time the decision was made when he said, "I feel I'm getting pushed into something." A10. He echoed it again in the last line of his letter, writing, "I have not been giv[e]n room to breath[e]." A22.

The magistrate judge places particular emphasis on the following post script to the letter:

I would also like to add that if I was a person with money and wanted to change counsel I could do so. But because I have no money and can not afford my own lawyer I am denied this right?

A22.

This too should be taken at face value, as an expression of petitioner's frustration rather than an abandonment of his request to defend *pro se*.

At most, this letter can be read as a rehashing of the petitioner's complaints about counsel, already voiced at the hearing. It adds nothing new or decisive to the record.

The state appellate court's finding that petitioner's request was equivocal is not fairly supported by the record.

**2. The Trial Judge's Finding that Petitioner Did Not Knowingly and Intelligently Waive His Right to Counsel is Not Fairly Supported by the Record.**

Implicit in a criminal defendant's assertion of his right to self-representation is his relinquishment of his right to counsel. *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541. Such a waiver must be knowingly, intelligently and voluntarily made, with open eyes. *Id.* This requirement is satisfied if the defendant is literate, competent, and understands "the dangers and disadvantages of self-representation." *Id.*

The New York courts have held that "[i]n determining the defendant's competency to waive counsel the court may properly inquire into the defendant's age, education, occupation and previous exposure to legal procedures." *McIntyre*, 36 N.Y.2d at 17, 364 N.Y.S.2d at 845, 324 N.E.2d at 330.

The Second Circuit, however, has not adopted these criteria, holding instead that it is error to deny a request to proceed *pro se* based on the defendant's lack of education, background, training or experience. *Johnstone*, 808 F.2d at 216 ("*Faretta* imposes no such qualifications on the right to defend *pro se*.")[9] The Second Circuit requires only that the defendant was "competent to stand trial and that he clearly sought to represent himself after being duly warned of the risks of doing so." *Id.*

In the case at bar, the trial judge found that the petitioner was not competent to defend himself. In the words of the judge, "I'm not satisfied you're capable of representing yourself. Therefore, I decline to allow you to so proceed because, to do so would be to your own folly. You would, in fact, be just hanging yourself." A14. The judge came to this conclusion after questioning petitioner about his education and legal background, and talking with petitioner's mother.

The Second Circuit, however, does not require such an inquiry, and is satisfied that if the defendant is competent to stand trial, he is competent to represent himself.[10] *Johnstone*, 808 F.2d at 216. Petitioner's compe-

---

9. Furthermore, the Supreme Court, in *Faretta*, 422 U.S. 806, 95 S.Ct. 2525, explicitly held that "technical legal knowledge ... [is] not relevant to an assessment of [the defendant's] knowing exercise of the right to defend himself." *Id.* at 836, 95 S.Ct. at 2541.

10. Although the Second Circuit does not require such an analysis, it is clear that even under the New York test the petitioner must be considered competent. Petitioner was twenty-three years of age, had an eighth grade education (and has since received his GED), claimed to have worked

tence to stand trial has not been disputed. Therefore, to satisfy the Second Circuit's waiver requirement, it remains only to establish that petitioner was aware of the "risks of foregoing counsel." *Id.*

The following excerpts from the exchange between petitioner and the court reveal that petitioner was aware of what he was facing:

*Court:* You realize that you're facing a substantial period of time ...

*Defendant:* [ ].... Yes.

*Court:* You realize, also, you're not versed in the law and, in my judgment, you're not capable of representing yourself adequately in a Court of law?

*Defendant:* (No audible response).

*Court:* You feel you will?

*Defendant:* Um-hmm.

A9

\* \* \* \* \* \*

*Defendant:* I feel I'm getting pushed into something; you know.

*Court:* What are you getting pushed into?

*Defendant:* This crime.

*Court:* You're charged with a crime.

*Defendant:* I know what I'm charged with.

*Court:* Okay.

*Defendant:* Being charged with it is not guilty until you're found guilty.

*Court:* That's absolutely true. That's why we have all the mechanisms we have. That's why we gave you an attorney to represent you and work with you and your interests. That's why we gave you a pretrial. That's why we have given you all the protections we give every defendant.

*Mrs. Jones:* You need the protection of a lawyer.

in the family business (Hacker's Packers), and had taken part in at least one other legal proceeding. By contrast, Johnstone, who was found by the Second Circuit to be competent to waive his right to counsel, was only eighteen years of age, had scarcely any formal education, no known occupation, and no experience with legal proceedings. *Johnstone,* 808 F.2d at 215. *See also Johnstone,* 633 F.Supp. at 1248.

*Defendant:* No, I don't.

A10–11

While petitioner's decision to forego counsel may not have been wise, it was at least informed. "The standard in such cases is not what the judge thought was in petitioner's best interests, but what petitioner believed to be such, after being fully informed." *Johnstone,* 633 F.Supp. at 1249.

 It is not the function of the courts to act as *parens patriae* to competent criminal defendants. When counsel is forced upon an unwilling defendant, fundamental principles of self-determination are violated [11] and "the right to make a defense is stripped of the personal character upon which the [Sixth] Amendment insists." *Faretta,* 422 U.S. at 820, 95 S.Ct. at 2534.

 It is well settled that "[t]he Sixth Amendment affords no lesser rights to the foolish than to the wise." *Johnstone,* 633 F.Supp. at 1249. While it is possible to agree with the trial judge that petitioner's request to defend *pro se* was "folly," his finding that the request was not competently made is not fairly supported by the record.

### 3. The State Court Made No Finding that Petitioner Engaged in Conduct Which Would Prevent the Fair and Orderly Exposition of the Issues.

Although petitioner's motives for requesting a change of counsel and for asserting his right to defend *pro se* were regarded with suspicion by the state courts in both proceedings, no factual finding was ever made that petitioner engaged in conduct which would prevent the fair and orderly exposition of the issues. Thus there is no factual determination to be reviewed by this court.

The magistrate judge notes this, but he is nevertheless influenced by the "judge's strong concerns" in this regard. R/R at 12.

11. "Unwanted appointed counsel, however skillful, represents no one but the perceived need of Big Government to deprive individuals of their freedom of action, supposedly to keep the scales of justice in balance. Those bureaucratic interests must yield to petitioner's constitutional right." *Johnstone,* 633 F.Supp. at 1249.

Such influence is, in this case, improper. Because of the weight given to these concerns by the magistrate judge, a brief discussion is in order.

The trial judge seemed suspicious of petitioner's motives for two reasons. First, he appeared concerned that petitioner was unhappy with appointed counsel because counsel would not engage in unethical conduct. A5–8. Secondly, he seemed to feel that petitioner may have been trying to delay the trial. A15.

### a. Counsel's Refusal to Engage in Unethical Conduct.

Under New York law, "[w]here a court feels that the motion [to defend *pro se*] is a disingenuous attempt to subvert the overall purpose of the trial ... the proper procedure is to conduct a dispassionate inquiry into the pertinent factors." *McIntyre*, 36 N.Y.2d at 19, 364 N.Y.S.2d at 846, 324 N.E.2d at 331.

The judge's concern in the case at bar was prompted by suggestions from counsel that petitioner had asked him to conduct his defense in an unethical manner. After questioning both petitioner and counsel along those lines, A5–8, the judge determined that petitioner had not stated adequate grounds for a change of counsel, and he refused that request.[12] A8–9. It was at this point that petitioner asserted his right to represent himself. A9. Both the appellate court, *Hacker*, 167 A.D.2d 729, 563 N.Y.S.2d at 301, and the magistrate judge, R/R at 13, seem to infer from this that petitioner's aim was to do for himself those things counsel would not do for him, and to proceed in an improper manner on his own behalf.

The Second Circuit has held, however, that in the context of a defendant's request to defend *pro se*, "the reasons for his disenchantment with assigned counsel" are of no proper concern to the court. *United States ex rel. Jackson v. Follette*, 425 F.2d 257, 259

(2nd Cir.1970). *See also Johnstone*, 633 F.Supp. at 1249 ("[I]nquiry into petitioner's motivations is improper, just as the cause for his claimed disenchantment with his attorney is of no proper concern to the Court when presented in [the context of a request to proceed *pro se*].")

Consequently, when evaluating petitioner's request to proceed *pro se*, it is inappropriate to consider petitioner's motive for wanting new counsel, even if the motive were, as the trial judge believed, to find an attorney who would take unethical measures on petitioner's behalf. It follows that any inference about petitioner's future behavior that is based on this alleged motivation is also inappropriate. Therefore, because no factual finding was made upon this ground by either state court, and because any weight given by the magistrate judge to such considerations was improper, petitioner's motives are of no concern to this court, and speculation about them shall not be entertained for the purposes of this petition.

### b. Delay

The New York courts have held that "[w]hen a defendant's conduct is calculated to ... unreasonably delay the progress of the trial he forfeits his right to self-representation." *McIntyre*, 36 N.Y.2d at 18, 364 N.Y.S.2d at 845.

After refusing petitioner's request to proceed *pro se* in the case at bar, the trial judge voiced his feeling that there were "a lot of games being played among those in jail right now, and the chief goal is to delay their trial." A15. The judge, however, made no specific reference to petitioner or petitioner's actions, and there is nothing in the record to indicate that petitioner's intent was to delay his trial.[13]

---

12. While the trial judge apparently believed that petitioner was unhappy with his attorney because counsel would not betray his ethical responsibility, there was no discussion of exactly what it was that petitioner wanted counsel to do. A5–8.

13. While granting petitioner's request to defend *pro se* may have resulted in delay, it is not the effect, but the *purpose* of the request which must be examined. *See Wiesner*, 726 F.Supp. at 920 ("Only when there is 'an affirmative showing of *purpose* to delay' may a request to proceed pro se be properly denied." quoting *Fritz v. Spalding*, 682 F.2d 782, 784 (9th Cir.1982) (emphasis in original)).

The issue of delay went no further. Neither the appellate court nor the magistrate judge mentioned it and, as no factual finding was based upon it, it shall not influence any decision of this court.

Because the state courts made no finding that petitioner engaged in conduct that would prevent the fair and orderly exposition of the issues, there is no factual determination subject to review by this court. Furthermore, any motive petitioner may have had in wishing to dispense with assigned counsel is not properly to be considered for the purposes of this petition.

**4. Improper Denial of a Defendant's Right to Self–Representation Can Never Be Harmless Error.**

■ The Second Circuit has held that the right to defend *pro se* is so essential to the "values of individual integrity, autonomy, and self-expression" that its improper denial can not ever be said to be harmless error. *Johnstone*, 808 F.2d at 218. The court reasoned that

> [a]pplication of harmless error analysis is particularly inappropriate to denial of the right to self-representation because a harmless error standard would, in practical effect, preclude vindication of the right. Since seasoned appointed counsel can almost invariably provide better legal representation than a *pro se* defendant, denial of the request to proceed *pro se* could rarely, if ever, be shown to have been prejudicial.

*Id.*

In essence, while the outcome of the trial might be unchanged if the defendant represents himself, the Sixth Amendment right to self-representation will be respected. The Second Circuit's holding is in line with *McKaskle v. Wiggins*, 465 U.S. 168, 177 n. 8, 104 S.Ct. 944, 950 n. 8, 79 L.Ed.2d 122 (1984), where Justice O'Connor stated that the denial of the right to self-representation is not amenable to harmless error analysis. "The

right is either respected or denied; its deprivation cannot be harmless." *Id.*

Based on this reasoning, the Second Circuit has taken the position that "violation of a defendant's right to proceed *pro se* requires automatic reversal of a criminal conviction." *Johnstone*, 808 F.2d at 218.

### CONCLUSION

■ Petitioner's request to defend *pro se* was unequivocally asserted. His waiver of the right to counsel was knowingly and intelligently made. The findings of the New York State courts that petitioner's request was equivocal and his waiver invalid are not fairly supported by the record. For the foregoing reasons, this court grants the petitioner's writ of *habeas corpus* and orders the petitioner's release unless the State promptly affords him a new trial.[14]

IT IS SO ORDERED.

---

**14.** At any such retrial, petitioner will not be required to represent himself. Rather, "the State will be obligated at any retrial to afford [petitioner] all of his Constitutional rights, including the right to have the assistance of counsel and the right to represent himself." *Johnstone v. Kelly*, 812 F.2d 821, 822 (2nd Cir.1987), *cert. denied*, 482 U.S. 928, 107 S.Ct. 3212, 96 L.Ed.2d 699 (1987).